UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ARNECCA WEATHERS,

                          **Plaintiff,**

                v.                            3:15-CV-575
                                                          (FJS)

CAROLYN W. COLVIN,

                          **Defendant.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **LACHMAN & GORTON**<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, New York 13767<br>Attorneys for Plaintiff | **PETER A. GORTON, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>**OFFICE OF REGIONAL**<br>**GENERAL COUNSEL – REGION II**<br>26 Federal Plaza – Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **HEETANO SHAMSOONDAR, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Arnecca Weathers brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Act"), seeking judicial review of a final decision of the Commissioner of

Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 18. Pending before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 18, 22.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff protectively applied for benefits[1] on March 30, 2010, alleging disability as of May 31, 2008. *See* Administrative Record ("AR") at 96. The Social Security Administration denied Plaintiff's applications on August 16, 2010. *See id.* at 110. Plaintiff filed a timely request for a hearing on September 10, 2010. *See id.* at 121. A video hearing was held on June 23, 2011, before Administrative Law Judge Elizabeth W. Koennecke ("ALJ"). *See id.* at 51. Attorney Peter Gorton represented Plaintiff at the hearing. *See id.*

On August 17, 2011, the ALJ issued a written decision in which she made the following findings "[a]fter careful consideration of the entire record . . . ."

1) Plaintiff has not "engaged in substantial gainful activity since May 31, 2008, the alleged onset date."
2) Plaintiff "has the following severe impairments: an adjustment disorder."
3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."
4) Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: should not work with dangerous or hazardous equipment or conditions or be exposed to respiratory irritants, the [Plaintiff] retains the ability (on a sustained basis) to frequently understand, carry out, and remember simple instructions; to frequently respond appropriately to supervision, coworkers, and usual work situations; and to frequently deal with changes in a routine work setting."
5) Plaintiff "has no past relevant work."
6) "Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform."

---

[1] Plaintiff applied for both Supplemental Security Income Benefits, *see* AR at 167, and Childs Insurance Benefits, *see id.* at 171.

7) Plaintiff "has not been under a disability, as defined in the Social Security Act, since May 31, 2008, through the date of this decision."

*See id.* at 54-63 (citations omitted).

The ALJ's decision became the Commissioner's final decision on October 21, 2012, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See id.* at 1-5. Plaintiff then commenced an action in this District, and the court remanded her case to the ALJ due to legal error. *See id.* at 925-26; *see Weathers v. Colvin*, No. 3:12-CV-1667 (finding error in the ALJ's handling of Plaintiff's seizure disorder).

In the intervening time, Plaintiff filed a subsequent application for benefits on October 26, 2012; and, upon remand, the Appeals Council directed the consolidation of Plaintiff's original and new application for benefits. *See* AR at 952. A video hearing was held on June 16, 2014, before the ALJ. *See id.* at 867. A supplemental hearing was held on September 8, 2014. *See id.* Attorneys Peter Gorton and Dorollo Nixon, Jr. represented Plaintiff at these hearings. *See id.*

On February 10, 2015, the ALJ issued her second written decision in which she made the following findings "[a]fter careful consideration of the entire record . . . ."

1) Plaintiff has not "engaged in substantial gainful activity since May 31, 2008, the alleged onset date."
2) Plaintiff "has the following severe impairments: a seizure disorder and a mental impairment (variously characterized)."
3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."
4) Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels, but she must avoid workplace hazards such as unprotected heights and/or operating dangerous/hazardous machinery. The [Plaintiff] retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, and relate to and interact appropriately with others in order to carry out simple tasks. The [Plaintiff] is able to handle simple, repetitive work-related stress in that she is able to make occasional decisions directly related to the

performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others. Additionally the [Plaintiff] is able to tolerate occasional, superficial exposure to the public."
5) Plaintiff "has no past relevant work."
6) "Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform."
7) Plaintiff "has not been under a disability, as defined in the Social Security Act, since May 31, 2008, through the date of this decision."

*See id*. at 869-83 (citations omitted).

Plaintiff then commenced this action on May 7, 2015, filing a supporting brief on January 13, 2016. *See generally* Dkt. Nos. 1, 18. Defendant filed a brief on August 13, 2016, arguing that the Court should affirm the ALJ's decision because there was substantial evidence in the record to support it. *See* Dkt. No. 19.

In support of her motion, Plaintiff advances two principal arguments. First, Plaintiff argues that the ALJ improperly weighed the medical evidence. Second, Plaintiff contends that there is not substantial evidence in the record to support the ALJ's determination of her residual functional capacity ("RFC"). Relatedly, Plaintiff argues that the ALJ failed to include any limitations with respect to her fine motor skills in the RFC.[2]

### III. DISCUSSION

**A. Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined

---

[2] Plaintiff also argued that the ALJ's decision was based on medical evidence that was not in the record. *See* Dkt. No. 18 at 12-13. This argument's genesis is based on Defendant's failure to file the addendum to the administrative record with the Court. *See* Dkt. No. 12; *see also* Dkt. No 22 at 6 Def.'s Br. (explaining her error). Defendant has since supplemented the record. *See* Dkt. No. 21. Furthermore, it is clear that these documents were in the record at the time of the decision. *See* AR at 885-90 (identifying the exhibits considered).

substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (summary order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for at least twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings,

> the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

**B. Weighing of medical opinions**

During the disability analysis, the ALJ "will always consider the medical opinions" in the record together with other relevant evidence. 20 C.F.R. § 404.1527(b) (citation omitted). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments" about a claimant's impairments and their effects. 20 C.F.R. § 404.1527(a)(2). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 404.1513(a).

Generally, the ALJ will consider the following factors in deciding what weight to afford the opinion of an acceptable medical source: whether the source examined the claimant; how well the source explains his or her opinion with relevant evidence; how consistent the opinion is with the record as a whole; whether the source is a specialist in the area of his or her opinion; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6).

Plaintiff argues that the ALJ erred in giving Dr. Ransom's opinion significant weight because she is a consultative physician, her report was nearly five years old at the time of the ALJ's decision, and her report is inconsistent with the opinion of Dr. Moore. *See* Dkt. No. 18 at 18. In her decision, the ALJ explained that she gave Dr. Ransom's opinion significant weight because her opinion was consistent with the opinions of Dr. Sirotenko, Dr. Kamin, Dr. Jenouri, Dr. Long, and Dr. Altmansberger. *See* AR at 879. It is well established that the report of a consultative physician may constitute substantial evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (holding that a report from a consultative physician constitutes substantial evidence that may invalidate a treating physician's contradictory opinion (citations omitted)). Although the Second Circuit has cautioned against ALJs "rely[ing] heavily on the findings of consultative physicians after a single examination," such reliance is warranted where there are a significant number of consistent opinions in the record. *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (citation omitted). Therefore, based on that fact that Dr. Ransom's opinion was consistent with the opinions of five other medical opinions in the record, the Court finds that the ALJ did not err in giving Dr. Ransom's opinion significant weight.

Next, Plaintiff argues that the ALJ erred in giving Dr. Moore's October 2014 evaluation little weight and her January 2015 opinion no weight. *See* Dkt. No. 18 at 19. According to Plaintiff, the ALJ should have given more weight to Dr. Moore's opinion because she administered cognitive testing and her opinion was consistent with Plaintiff's treating providers. *See id.* at 19-20. Furthermore, Plaintiff takes issue with the ALJ's inconsistent treatment of consultative examiners' opinions and their use of "check box" forms. *See id.* at 19.

In affording Dr. Moore's opinions little or no weight, the ALJ stated that Dr. Moore's opinion was inconsistent with Plaintiff's GAF score, which noted only moderate symptoms and

that Dr. Moore's opinion was contrary to the opinions of other physicians. *See* AR at 880. "It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses…." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted). Furthermore, the ALJ did not err in affording no weight to Dr. Moore's "check box" form because she found that it was contradicted by other medical evidence. *See Goodale v. Astrue*, 32 F. Supp. 3d 345, 358 (N.D.N.Y. 2012) (upholding an ALJ's decision to give little weight to a treating physician's opinion that used a "check box" form that Plaintiff's counsel had provided). Therefore, the Court finds that the ALJ did not err in the weight she afforded Dr. Moore's opinion.

Plaintiff further argues that the ALJ erred in affording minimal weight to the opinions of licensed clinical social worker ("LCSW") Sarah Harding. *See* Dkt. No. 18 at 21. The thrust of Plaintiff's argument is threefold: (1) the ALJ is not permitted to ignore the opinion of Ms. Harding because she is a social worker and not an accepted medical source; (2) the ALJ improperly relied on the opinions of several other physicians to discredit Ms. Harding's opinion; and (3) the ALJ wrongfully concluded that Ms. Harding's discharge summary was inconsistent with her treatment notes. *See id*. at 21-23.

Social Security Ruling 06–03p, which discusses how an ALJ is to treat "other sources" provides, in relevant part:

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources" ... to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to ... licensed clinical social workers[.]
>
> \* \* \* \* \* \* \* \* \* \*
>
> [M]edical sources ... such as ... licensed clinical social workers [ ] have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical

sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, *2, *3 (Aug. 9, 2006) (stating further that an ALJ should use the same factors in considering the weight to afford acceptable medical sources for the opinions of social workers).

In this case, the ALJ properly considered Ms. Harding's opinion in conformance with the regulations. It is exclusively the ALJ's province to determine the credibility of contradictory medical opinions. *See Carroll*, 705 F.2d at 642. The ALJ afforded Ms. Harding's opinion minimal weight because her opinions were inconsistent with other medical evidence, including Plaintiff's GAF score and the opinions of Dr. Altmansberger, Dr. Ransom, Dr. Kamin, and Dr. Long. *See* AR at 881. Therefore, the Court finds that the ALJ did not err in weighing Ms. Harding's opinion.

Finally, Plaintiff argues that the ALJ erred in giving reduced weight to Dr. Liu's opinion expressed in a questionnaire that Plaintiff's attorney provided on June 21, 2011, because, according to Plaintiff, Dr. Liu is a treating physician and the ALJ failed to give "good reasons" for not affording her opinion controlling weight. *See* Dkt. No. 18 at 24. The Commissioner's regulations instruct that,

> [g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). However, treating physician opinions are "'not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other

substantial evidence in the record . . . .'" *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curium)).

In the first instance, Dr. Liu is not a treating physician whose opinion is entitled to controlling weight. In *Mongeur*, the Second Circuit explained that the ALJ gives a treating physician controlling weight because of the "continuity of treatment [s]he provides and the doctor/patient relationship [s]he develops[.]" 722 F.2d at 1039 n.2. However, a physician who only examines a plaintiff "once or twice" does not develop the requisite physician/patient relationship to support the conclusion that she is a treating physician. *See id*. Similarly, in *Petrie*, the Second Circuit found that failing to give controlling weight to a physician who had "limited and remote" contact with the patient was not error. *Petrie*, 412 F. App'x at 405. In this case, Dr. Liu was one of five physicians at Strong Memorial Hospital who cared for Plaintiff when she underwent a brief inpatient study to determine the cause of her epileptic seizures. *See* AR at 521-59. In total, Plaintiff was admitted from May 12, 2011, to May 18, 2011. *See id*. Dr. Liu also saw Plaintiff on April 14, 2008, three years prior to her inpatient treatment and before her alleged onset date of May 31, 2008. *See* AR at 331-33. In addition, Dr. Liu had two follow-up appointments with Plaintiff on March 5, 2012, *see id*. at 10-11, and September 17, 2012, *see id*. 7-9. Thus, the record indicates that Dr. Liu's only contact with Plaintiff was one day in 2008, a six day period in 2011, and two follow-up appointments in 2012. Therefore, the Court concludes that the ALJ did not err in failing to treat Dr. Liu as a treating physician.

Having decided that Dr. Liu is not a treating physician, the record indicates that the ALJ properly considered the questionnaire and gave it reduced weight because it only considered

Plaintiff's functioning during a narrow period of time—April 5, 2011 through June 20, 2011.[3] *See id*. at 839 (Ex. "28F"), 884 (ALJ's decision). Furthermore, the June 2011 questionnaire is inconsistent with Dr. Liu's 2012 treatment notes that indicate Plaintiff "has made some progress" and "is not having any of her stress related seizures." *See id*. at 7. Therefore, the ALJ did not err in giving minimal weight to Dr. Liu's opinion based on this questionnaire.

**C. ALJ's RFC analysis**

Between steps three and four of the disability analysis, the ALJ must determine the claimant's RFC, which is defined as "the most you can still do [in a work setting] despite your limitations." 20 C.F.R. § 416.945(a)(1); s*ee also* 20 C.F.R. § 416.920(e),. The RFC analysis considers "all of your medically determinable impairments of which we are aware," even if they are not severe. *See* 20 C.F.R. § 416.945(a)(2). The ALJ is to consider "all of the relevant medical and other evidence" in assessing RFC. *See* 20 C.F.R. § 416.945(a)(3). Ultimately, "[t]he ALJ is responsible for determining, based on all the evidence, the claimant's physical capabilities." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983).

Furthermore, the Social Security Administration instructs the ALJ to perform a two-step analysis to assess a claimant's credibility in reporting her symptoms. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).[4]

---

[3] The end date represents the date that Dr. Liu purportedly filled out the questionnaire. *See* AR at 839. However it is unclear why Dr. Liu indicated April 5, 2011 as the start date for her responses in the questionnaire as the record shows that Plaintiff's treatment in began May 12, 2011. *Compare id*. at 839; *with id*. at 521-59.

[4] SSR 16-3P superseded SSR 96-7p; however, both of these regulations require the ALJ to perform a two-step analysis to asses a claimant's credibility in reporting her symptoms.

Plaintiff takes issue with the ALJ's RFC determination insofar as it does not account for her lack of concentration, work pace, and anticipated absenteeism, nor does it consider how workplace stress could exacerbate her seizures.

With respect to Plaintiff's concentration and work pace, the ALJ relied on the opinion of consultative psychological examiner Dr. Long who observed that Plaintiff was able to maintain attention and concentration. *See* AR at 1360. Furthermore, the ALJ relied on the opinion of Dr. Ransom who opined that Plaintiff could "maintain attention and concentration for tasks." *See* AR at 296. A report of a consultative physician "may constitute" substantial evidence. *Mongeur*, 722 F.2d at 1039. Moreover, the ALJ's RFC assessment includes restrictions based on Plaintiff's lack of concentration. For instance, the RFC only credits Plaintiff with maintaining attention and concentration for "simple" tasks. *See* AR at 879. With respect to absenteeism, the ALJ relied on the opinions of consultative examiners Dr. Ransom, Dr. Kamin, and Dr. Long, all of whom stated that Plaintiff could maintain a regular schedule. *See id.* at 296 (Dr. Ransom), 319 (Dr. Kamin), 1360 (Dr. Long).

With respect to the stress-related restraints of Plaintiff's seizure disorder, the ALJ concluded that Plaintiff was only able to "handle simple, repetitive work-related stress." *See id*. at 879. The ALJ also determined that there were many inconsistencies between Plaintiff's stated symptoms and the objective evidence. "'It is the function of the [Commissioner], not the [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (summary order) (quoting *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). In this case, the Court will not second-guess the ALJ's credibility finding because she identified specific record-based reasons for her ruling. *See id*. Accordingly, to the extent that

Plaintiff argues that the ALJ erred in determining her RFC, "whether there is substantial evidence to support the appellant's view is not the question" on appeal. *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). For these reasons, the Court finds that substantial evidence supports the ALJ's RFC determination and that she applied the appropriate legal standards. *See Richardson*, 402 U.S. at 401.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No 18, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 22, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: January 17, 2017
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge